**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cv-00337-FDW**

| | | |
|---|---|---|
| KAREEM LOCKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| GEORGE SOLOMON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** is before the Court upon Defendants Daniel Hatley's and Benjamin Carver's Motion for Judgment on the Pleadings. (Doc. No. 17). Also before the Court are Plaintiff's "Pro Se Request for Production of Documents and Things and Notice of Depositions on Written Questions" (Doc. No. 9), "Request for Leave to Conduct Discovery" (Doc. No. 21), Motion to Appoint Counsel (Doc. No. 22), and Motion for extension of time (Doc. No. 26), and Defendants' Motion for Discovery Protective Order (Doc. No. 24).

**I.  BACKGROUND**

Plaintiff is a prisoner of the State of North Carolina. According to his Complaint, filed pursuant to 42 U.S.C. § 1983, Plaintiff was placed on a Department of Public Safety ("DPS") "watch list" for suspected gang membership and affiliation on August 3, 2009. (Compl. 7, Doc. No. 1.) On December 11, 2015, Plaintiff was informed by Defendant Hatley, identified as a Security Risk Group Intelligence Officer ("SRGIO") at Brown Creek Correctional Institution ("BCCI"), that he was going to recommend Plaintiff be taken off the watch list and given a Security Threat Group ("STG") level classification based on Plaintiff's membership in a gang.[1]

---
[1] The acronyms "STG" and "SRG" (Security Risk Group) are used interchangeably throughout the Complaint.

1

(Grievance # 3510-2015-5CDM-01231 (hereinafter "Grievance # 01231"), Doc. No. 1 at 16.) Plaintiff filed a grievance on December 16, 2015, complaining of Hatley's decision and pointing out that he had held prison jobs, completed all assigned tasks, and had not been charged with any gang-related infraction since being placed on the watch list. (Grievance # 01231.)

On January 6. 2016, Defendant Hatley informed Plaintiff that he had been classified as STG Level III, with accompanying restrictions on visitation and phone-calls, among others things. (Compl. 7.) Hatley told Plaintiff he was classified as Level III because of his "rank" within the identified gang. (Compl. 7.)

On January 19, 2016, Plaintiff was charged with two infractions – attempting to possess cell phones and watches, and attempting to possess tobacco. (Compl. 8.) The charges were levied based upon allegations purportedly made by a confidential informant to Defendant Samantha Horne, identified as an SRG Officer at BCCI. (Compl. 8; Off. and Disc. Rpt., Doc. No. 1 at 22.) Defendant Benjamin A. Carver, identified as a Disciplinary Hearing Officer ("DHO") at Alexander Correctional Institution, presided over Plaintiff's January 29, 2016 disciplinary hearing. Defendant Carver found Plaintiff guilty of both infractions and punished him accordingly. (Compl. 8.)

Plaintiff claims that he was given an STG classification in violation of his right to due process because Defendants failed to follow DPS's policies and procedures with respect to that classification. (Compl. 9.) Plaintiff further claims that he was given a Level III STG classification in retaliation for filing Grievance # 01231 and that the January 19, 2016 infractions were fabricated to legitimize the increase in his security status after the fact and to retaliate for Grievance # 01231. (Compl. 10-13.) Finally, Plaintiff claims Defendant Carver violated his rights to due process in connection with the administrative disciplinary hearing. (Compl. 12-13.)

The Court conducted a frivolity review of the Complaint and found Plaintiff's claim that he was given an STG classification in violation of his right to due process did not state a claim for relief under 42 U.S.C. § 1983. (Initial Rev. Order 3-5, Doc. No. 7.) The Court found Plaintiff's retaliation claims as to both the STG classification and the fabrication of disciplinary charges were not clearly frivolous. (Initial Rev. Order 5.) The Court also found Plaintiff's due process claims as to the administrative disciplinary proceeding were not clearly frivolous and allowed Plaintiff to proceed with those claims. (Initial Rev. Order 5-6.) The Court dismissed Defendants George Solomon, Christopher Rich, and Kenneth Diggs from this civil action, as Plaintiff has not alleged any acts by those defendants. (Initial Rev. Order 6.)

Defendants Hatley and Carver have filed an Answer (Doc. No. 16) and a Motion for Judgment on the Pleadings (Doc. No. 17). They also have filed a Motion for Discovery Protective Order (Doc. No. 24) in response to Plaintiff's requests to conduct discovery (Doc. Nos. 9, 21). Defendant Samantha Horne has not yet been served a summons in this action. Plaintiff has filed a Motion for extension of time to respond to the Motion for Judgment on the Pleadings (Doc. No. 26), and a Response to the Motion for Judgment on the Pleadings (Doc. No. 30).

## II. JUDGEMENT ON THE PLEADINGS

### A. Standard of Review

"A motion for judgment on the pleadings under Rule 12(c) [of the Federal Rules of Civil Procedure] is assessed under the same standard that applies to a Rule 12(b)(6)[2] motion." Occupy Columbia v. Haley, 738 F.3d 107, 115 (4th Cir. 2013). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does *not* resolve contests

---

[2] Federal Rule of Civil Procedure 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted."

3

surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)) (emphasis added). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). "The sole distinction between the two motions is that a court ruling on a Rule 12(c) motion may consider the answer as well as the complaint." In re Stucco Litigation, 364 F. Supp. 2d 539, 541 (E.D.N.C. 2005).[3] The court may also consider any materials referenced in, incorporated by reference, or attached to the pleadings. See Fed. R. Civ. P. 10(c).

A court should grant a motion for judgment on the pleadings only if, " 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.' " Drager v. PLIVA USA, Inc., 741 F.3d 470, 474 (4th Cir. 2014) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)). A court may grant a motion for judgment on the pleadings if a claim fails as a matter of law regardless of the facts alleged. See Neitzke v. Williams, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").

---

[3] The Court, in fact, did not consider the Answer or any of its attachment in adjudicating the Motion for Judgment on the Pleadings. It considered only the Complaint, its attached exhibits, the Motion, and the memorandum supporting the Motion.

4

B. Discussion

1. § 1983 v. Habeas

Defendants contend they are entitled to judgment on the pleadings because Plaintiff's due process challenges to the administrative disciplinary proceedings are not cognizable under 42 U.S.C. § 1983. (Mot. 1, Doc. 17.) Defendants argue that judgment in Plaintiff's favor would call into question the duration of his sentence, and that he, therefore, must raise his claims in an application for a writ of habeas corpus under 28 U.S.C. § 2254. (Mot. 1.) They likewise assert Plaintiff cannot maintain his disciplinary hearing-related retaliation claim without, by necessity, challenging the duration of his sentence. (Mot. 1.)

The Due Process Clause mandates several procedural safeguards before an inmate may be punished for violating prison disciplinary rules with the loss of a protected liberty interest, such as earned good-time credit, or with deprivation of property. See Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455 (1985); Wolff v. McDonnell, 418 U.S. 539, 557 (1974). An inmate is entitled to these procedural protections only when the disciplinary action results in the loss of statutory good-time credits or where some other liberty or property interest is at issue. See Wolff, 418 U.S. at 557.

"[A] state prisoner's § 1983 action is barred," however, "if success in that action would necessarily demonstrate the invalidity of [that prisoner's] confinement or its duration," unless the prisoner proves that the challenged criminal or disciplinary conviction has been terminated in his favor. Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (interpreting Heck v. Humphrey, 512 U.S. 477 (1994)); see also Edwards v. Balisok, 520 U.S. 641, 647-48 (1997) (applying Heck to § 1983 claim seeking restoration of good conduct time forfeited as penalty for prison disciplinary conviction). In other words, when an inmate's § 1983 claim challenging a disciplinary

5

conviction, if successful, could shorten his term of imprisonment through the restoration of forfeited good conduct time, the claim is barred under Heck, unless he first proves that the conviction has been terminated in his favor, through habeas proceedings or otherwise. See id.

Conversely, "where success in the action would not necessarily spell immediate or speedier release" from imprisonment, a prisoner may not pursue his claims in a habeas corpus proceeding. Dotson, 544 U.S. at 81. Instead, a civil rights action under 42 U.S.C. § 1983 provides the "appropriate remedy." See id.

Here, Plaintiff lost 20 days of sentence reduction credits as a result of one of his disciplinary convictions. (Off. and Disc. Rpt., Doc. No. 1 at 22.) Plaintiff, however, is serving a life-sentence. Under North Carolina law, sentence reduction credits do not shorten the length of a life sentence but merely apply to custody status, parole eligibility, and potential commutation. Jones v. Keller, 698 S.E.2d 49 (N.C. 2010). Therefore, an inmate sentenced to life imprisonment in North Carolina does not have a liberty interest in sentence reduction credits. See Waddell v. Dep't of Corr., 680 F.3d 384, 395 (4th Cir. 2012). Because Plaintiff does not have a cognizable liberty interest in his good time credits, he may not pursue his claims in a habeas corpus proceeding. Dotson, 544 U.S. at 81. Instead, a civil rights action under 42 U.S.C. § 1983 provides the "appropriate remedy." See id. Accordingly, Defendants are not entitled to judgment on the pleadings on the grounds that Plaintiff must seek relief for his disciplinary hearing-related claims by way of a petition for writ of habeas corpus.

   **2. Retaliation Claim Related to STG Classification**

According to the Complaint, Defendant Hatley informed Plaintiff on January 6, 2016, that he had been removed from the watch list and assigned an STG Level III classification. (Compl. 7.) Plaintiff received notification of the change three weeks after he filed Grievance #

6

01231. (Grievance # 01231, Doc. No. 1 at 16.) He claims the change in his classification status was made in retaliation for his filing Grievance # 01231. (Compl. 11.)

Defendants contend they are entitled to judgment on the pleadings because Plaintiff can prove no facts which establish that Defendant Hatley took an action that adversely affected Plaintiff's First Amendment rights or that there was a causal relationship between the Plaintiff's submission of Grievance # 01231 and the actions attributed to Hatley in the Complaint. (Mot. 1.) Plaintiff counters that Defendants have misconstrued his claim. (Resp. to Mot. 5-6, Doc. No. 30.) Plaintiff asserts that his retaliation claim is not independently based upon Hatley's actions. (Resp. to Mot. 5.) Instead, Plaintiff asserts, his retaliation claim is based on,

> the concerted, & comprehensive actions, efforts, & accusations of S.R.G. Sgt. Samantha Horne, S.R.G.I.O. Daniel Hatley, & D.H.O. Benjamin A. Carver. That resulted in him being "classified" as S.R.G. Level III (Hatley recommended) in violation of due process, & written-up on false charges by Samantha Horne in violation of procedural due process, and found guilty with sanctions in violation of procedural due process. All occurring after Plaintiff requested not to be retaliated/harassed for exercising his right to seek remedy for the violations against him.

(Resp. to Mot. 5-6.) Before the Court can determine whether judgment on the pleadings is warranted, it first must determine the nature of the retaliation claim(s) raised in the Complaint.

Plaintiff's Complaint is not a model of clarity; however, his primary allegations are that one or more of the defendants violated his due process rights and retaliated against him for exercising his First Amendment rights. In his Complaint, Plaintiff argues, verbatim:

> Petitioner asserts that the 1st, 5th, and 14th Amends prohibit the Govt from retiliation against an inmate, and depriving an inmate of life liberty or property without due process of law. The State through its statutes and the NCDPS regulations and disciplinary policies, and procedures have created a due process protected liberty interest for those persons accused of misconduct/allegations by confidential informants, and prison staff, and to have redress against retiliation, false allegations, and false misconduct reports/infractions. False misconduct charges might not violate due process, but it will violate the 1st Amend. If done to retiliate against an inmate for engaging in a protected conduct. . . . Petitioner points

7

> out that the unlawful level classification up-grade, and the false allegations that supported to disciplinary charges surfaced after Petitioner filed Adm. remedy No. 3510-2015-5CDM-01231, and that the State had to have an infraction in an effort to bring/justify the classification level up-grade" placed on the Petitioner on (1/6/16) in compliance with policy/procedure.

(Compl. 11) (legal citation omitted).

This Court already has held that the Complaint does not state a due process claim based upon Plaintiff's STG classification. (Initial Rev. Order 4-5.) As such, the only relevant, identifiable claim(s) presented above is that Plaintiff was given a Level III STG classification and false charges were brought against him in retaliation for his filing Grievance # 01231. The only Defendant alleged in the Complaint to have had any role in the STG classification is Hatley. (Compl. 6, 7, 9.) Thus, Defendants are seeking judgment on the pleadings solely on the question of whether Plaintiff can state a claim for relief based upon Hatley's alleged role in the STG classification. Defendants are not moving for judgment on the pleadings related to any alleged action taken by Defendants Horne or Carver after Plaintiff was assigned an STG classification. In short, Plaintiff has not demonstrated that Defendants have misconstrued his retaliation claim(s).

Prisoners have a clearly established First Amendment right "to file a prison grievance," pursuant to an established grievance procedure, "free from retaliation." Booker v. S.C. Dep't of Corr., 855 F.3d 533, 545 (4th Cir. 2017), cert. denied, 138 S. Ct. 755 (2018). A First Amendment retaliation claim under § 1983 consists of three elements: (1) the plaintiff engaged in constitutionally protected First Amendment activity, (2) the defendant took an action that adversely affected that protected activity, and (3) there was a causal relationship between the plaintiff's protected activity and the defendant's conduct. Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017), cert. denied, 138 S. Ct. 738 (2018). The "plaintiff suffers adverse action if the

defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Id. Notably, the "plaintiff's actual response to the retaliatory conduct is not dispositive of the question of whether such action would likely deter a person of ordinary firmness." Id. at 250. Finally, the plaintiff must plead sufficient facts to show that the alleged retaliatory act "was taken in response to the exercise of a constitutionally protected right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994).

Looking at the first element, the only protected First Amendment activity identified by Plaintiff in the Complaint is his filing of Grievance # 01231. As to the second element, Plaintiff alleges two adverse actions: 1) the "unlawful level classification up-grade," and 2) the "false allegations" culminating in disciplinary action against him. (Compl. 6, 11.) As previously explained, the Court is concerned only with the first alleged adverse action at this point in the proceedings.

The facts, as alleged in the Complaint and gleaned from the documents attached to it, are that on December 11, 2015, Defendant Hatley informed Plaintiff he was going to recommend Plaintiff be taken off the watch list and given an STG level classification. (Grievance # 01231.) Five days later, Plaintiff filed Grievance # 01231, complaining of Hatley's decision. On January 6, 2016, Hatley informed Plaintiff he had been assigned an STG Level III classification.

The facts demonstrate Plaintiff filed Grievance # 01231 in response to Hatley's decision to recommend an STG classification. To state a First Amendment retaliation claim, Plaintiff must, at a minimum, allege facts indicating Hatley took some action *other than* simply following through on his pre-grievance decision to recommend an STG classification and that he did so after Plaintiff filed Grievance # 01231. See Adams, 40 F.3d at 75 (The plaintiff must show that the alleged retaliatory conduct "was taken in response to the exercise of a constitutionally

9

protected right or that the act itself violated such a right.").

In his Complaint, Plaintiff identifies only one post-Grievance # 01231 action taken by Hatley –notifying Plaintiff on January 6, 2016, that he had been classified STG Level III. In his Response to the Motion for Judgment on the Pleadings, Plaintiff clarifies that Hatley's alleged retaliatory act was recommending Plaintiff be assigned a Level III STG classification. (Resp. to Mot. 5). Plaintiff contends Hatley's recommendation must have been retaliatory because, "S.R.G. policy requires that a person have an infraction [and/or] a cluster of infractions in order to be validated as S.R.G. Level III" (Resp. to Mot. 4), and, according to Plaintiff, he did not have a gang-related infraction or cluster of gang-related infractions for more than a year prior to Hatley's recommendation. Plaintiff further contends Defendants had to fabricate charges against him to justify the STG classification after the fact.

Plaintiff, however, argued in Grievance # 01231 that Hatley's decision to recommend an STG classification was unjustified because, "[a]ccording to the S.T.G. policy" Plaintiff did not meet the criteria to be "bumped up to a level when [he had not] had 'any infractions' since [being on] the watch list dealing with [any] type of gang related activities." (Grievance # 01231.) The Grievance, then, demonstrates that Hatley had decided to recommend STG classification despite Plaintiff's purported lack of infractions. Therefore, if Hatley's recommendation was a retaliatory act, it must have been in retaliation for something that *preceded* Plaintiff's filing of Grievance # 01231.

Hatley told Plaintiff he had been classified as STG Level III because of his rank in a gang. From that statement and Plaintiff's assertions regarding gang-related infractions, the Court may reasonably infer that certain criteria must be met or circumstances exist before an inmate may be assigned a particular STG level. Plaintiff does not allege any facts from which the Court

could reasonably infer Hatley had the authority to remove Plaintiff from the watch list and assign him any STG classification level himself. In fact, Grievance # 01231 states Hatley told Plaintiff he was going to *recommend* Plaintiff be given an STG-level classification, which indicates someone else was responsible for making the classification decision. According to an exhibit attached to the Complaint, the final decision regarding Plaintiff's classification was made by the Department of Public Safety's Special Operations and Intelligence Unit, located in Raleigh, NC. (Plaintiff's 1/18/2016 Req. for Info., Doc. No. 1 at 20.)

Thus even if Plaintiff were to allege, which he does not, that Hatley originally intended to recommend only that Plaintiff be assigned *an* STG classification but then specifically recommended an STG Level III in retaliation for filing Grievance # 0123, Plaintiff cannot show that such an act "would likely deter a person of ordinary firmness" from exercising his First Amendment right to file grievances. See Martin, 858 F.3d at 249. The classifying entity would have to determine whether the inmate met the requisite criteria for a particular STG level regardless of any recommendation by Hatley.

Finally, Plaintiff cannot prove any set of facts showing Defendants fabricated charges against him to justify the STG classification.[4] The charges against Plaintiff originated on January 19, 2016. (Off. and Disc. Rpt., Doc. No. 1 at 22.) Plaintiff's STG Level III classification was approved/validated on or before January 6, 2016, by a DPS entity outside Brown Creek Correctional Institution despite Plaintiff having had no gang-related infraction or cluster of gang-related infractions for more than a year.

After accepting all well-pleaded allegations in the Complaint as true and drawing all reasonable factual inferences from those facts in Plaintiff's favor, it appears certain that he cannot

---

[4] This does not mean Plaintiff is unable to allege any set of facts demonstrating the charges were fabricated in retaliation for Grievance # 01231. That question is not before the Court at this time.

prove Defendant Hatley, 1) took an action that adversely affected Plaintiff's First Amendment rights, and 2) that there was a causal relationship between Plaintiff's submission of Grievance # 01231 and Hatley's STG recommendation. Defendant Hatley is entitled to judgment on the pleadings with respect to Plaintiff's claim that he recommended an STG Level III classification in retaliation for Plaintiff filing Grievance # 01231.

### 3. Qualified Immunity

Defendants contend they are entitled to the protection of qualified immunity. "The doctrine of qualified immunity shields government officials from liability for civil damages when their conduct does not violate clearly established constitutional or other rights that a reasonable officer would have known." Sims v. Labowitz, 885 F.3d 254, 260 (4th Cir. 2018) (citing Pearson v. Callahan, 555 U.S. 223, 231 (2009); Graham v. Gagnon, 831 F.3d 176, 182 (4th Cir. 2016)) (emphasis added).

The Complaint raises only one claim against Defendant Hatley – that he recommended Plaintiff be assigned a Level III STG classification in retaliation for Plaintiff filing Grievance # 01231.[5] As previously explained, Hatley is entitled to judgment on the pleadings with respect to that claim. Therefore, whether Hatley is entitled to qualified immunity is moot.

Defendants contend Defendant Carver is entitled to qualified immunity because he did nothing more "than make a value judgment, i.e., apply prison disciplinary rules to the facts presented." (Mot. 18.) Under these circumstances, Defendants argue, Carver "could not have known [his] conduct violated Plaintiff's First Amendment rights." (Mot. 18.)

A liberal reading of the Complaint reveals that Plaintiff's claims against Defendant

---

[5] While Plaintiff may believe he has raised additional claims against Defendant Hatley, he has alleged no facts in his Complaint implicating Defendant Hatley in either his claim that false charges were brought against him or that his due process rights were violated in connection with his disciplinary hearing.

Carver are that Carver violated his due process rights in connection with his disciplinary proceedings. (Compl. 10, 11-13.) Plaintiff does not allege any facts in the Complaint giving rise to a claim that Carver violated Plaintiff's First Amendment rights or that Carver violated Plaintiff's right to file Grievance # 01231 free from retaliation.[6] Therefore, whether Carver is entitled to qualified immunity on the grounds argued in the Motion for Judgment on the Pleadings is, likewise, moot.

### III. DISCOVERY

The Court has not yet entered a scheduling order in this action. It shall do so by separate order. Accordingly, Plaintiff's discovery motions shall be denied as premature, and Defendants' Motion for Discovery Protective Order shall be denied as moot.

### IV. MOTION FOR APPOINTMENT OF COUNSEL

In support of his motion for appointment of counsel, Plaintiff states he is unable to afford counsel, is proceeding in forma pauperis, is incarcerated, and does not have access to a law library. (Doc. No. 22.) He also contends the issues in the case are complex. Additionally, Petitioner asserts that an attorney would be able to locate and serve summons on Defendant Horne.

There is no absolute right to the appointment of counsel in civil actions such as this one. Therefore, a plaintiff must present "exceptional circumstances" in order to require the Court to seek the assistance of a private attorney for a plaintiff who is unable to afford counsel. Miller v. Simmons, 814 F.2d 962, 966 (4th Cir. 1987). This case does not present exceptional circumstances that justify the appointment of counsel. As for Defendant Horne, by separate

---

[6] As with Defendant Hatley, Plaintiff may believe he has raised additional claims against Defendant Carver, but he has alleged no facts in the Complaint implicating Caver in his STG classification or in fabricating disciplinary charges against him.

order, the Court shall direct the Clerk of Court to take additional steps to effectuate service of process on Defendant Horne as provided by Local Civil Rule 4.3.

Plaintiff's motion for the appointment of counsel will be denied for the reasons stated. Should this case proceed to trial, the Court shall reconsider the issue of appointing counsel for Plaintiff.

V. **CONCLUSION**

Defendant Hatley is entitled to judgment on the pleadings with respect to Plaintiff's claim that he recommended Plaintiff be assigned an STG Level III classification in retaliation for Plaintiff filing Grievance # 01231. Otherwise, Defendants' Motion for Judgment on the Pleadings shall be denied. All other pending motions shall be denied for the reasons stated herein. By separate order, the Court shall establish a schedule for discovery and the filing of future motions. Also by separate order, the Court shall direct the Clerk of Court to take additional steps to effectuate service of process on Defendant Horne.

**IT IS, THEREFORE, ORDERED** that:

1. Defendant's Motion for Judgment on the Pleadings (Doc. No. 17) is **GRANTED IN PART** and **DENIED IN PART**, without prejudice to Defendants' ability to reassert their arguments at summary judgment. Accordingly,

2. Plaintiff's First Amendment Retaliation Claim against Defendant Daniel Hatley for recommending Plaintiff be assigned an STG Level III classification is **DISMISSED**.

3. Plaintiff's "Pro Se Request for Production of Documents and Things and Notice of Depositions on Written Questions" (Doc. No. 9) and "Request for Leave to Conduct Discovery" (Doc. No. 21) are **DENIED** as premature;

4. Plaintiff's Motion to Appoint Counsel (Doc. No. 22) is **DENIED**;

5. Plaintiff's Motion for Extension of Time (Doc. No. 26) is **DENIED** as moot; and

6. Defendants' Motion for Discovery Protective Order (Doc. No. 24) is **DENIED** as moot.

**SO ORDERED.**

Signed: April 24, 2018

Frank D. Whitney
Chief United States District Judge