UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cv-00337-FDW

| KAREEM LOCKE, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| vs. | ) ) | ORDER |
| GEORGE SOLOMON, et al., | ) ) ) | |
| Defendants. | ) ) | |

**THIS MATTER** is before the Court upon Defendant Benjamin A. Carver's Motion for Summary Judgment. (Doc. No. 38.)

## I. RELAVANT BACKGROUND

Plaintiff is a prisoner of the State of North Carolina, who on June 21, 2017, filed a civil rights Complaint pursuant to 42 U.S.C. § 1983. (Doc. No. 1.) After conducting a frivolity review, the Court dismissed all named Defendants except Daniel Hatley, Benjamin Carver, and Samantha Horne, identified as employees or former employees of the North Carolina Department of Public Safety ("NCDPS"). (Doc. No. 7.) On April 25, 2018, the Court entered Judgment on the Pleadings in favor of Defendant Hatley with respect to the sole claim against him, i.e., that he orchestrated a change in Plaintiff's Security Threat Group ("STG") classification in retaliation for Plaintiff's filing of Grievance No. 3510-2015-5CDM-01231 ("Grievance No. 01231"). (Doc. No. 32.)

At this point in the proceedings there remain two pending claims in this action. The first is that Defendant Horne fabricated and lodged administrative disciplinary charges against

1

Plaintiff on January 19, 2016, in retaliation for Plaintiff's filing Grievance No. 01231.[1] The second is that Defendant Carver, the Disciplinary Hearing Officer ("DHO") who heard the January 19, 2016 disciplinary charges, violated Plaintiff's due process rights during the administrative disciplinary proceedings.[2] The summary judgment Motion concerns only the claim against Defendant Carver.

The Court entered an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), notifying Plaintiff of his right to respond to Defendant Carver's Motion and the evidentiary obligations imposed under Federal Rule of Civil Procedure 56. (Doc. No. 41.) Plaintiff has filed a Response opposing Defendant's Motion. (Doc. No. 43.)

## II.    STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

---

[1] Plaintiff also alleged in his Complaint that the charges were fabricated to justify the increase in his STG classification, but as this Court stated in its Order on Defendants' Motion for Judgment on the Pleadings, "Plaintiff cannot prove any set of facts showing Defendants fabricated charges against him to justify the STG classification." (Doc. No. 32 at 11.)

[2] Although Plaintiff alleged in his Complaint that Defendant Carver conspired with Defendants Hatley and Horne to convict him of fabricated disciplinary charges to justify the increase in his STG classification and to retaliate against Plaintiff for filing Grievance No. 01231, Plaintiff has failed to allege any facts that would support the existence of such a conspiracy or a claim that Carver violated Plaintiff's right to file Grievance # 01231 free from retaliation. (Doc. No. 32 at 13.)

2

demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. " 'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.' " Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

### III. DISCUSSION

"To state a claim under [42 U.S.C.] § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Plaintiff claims Defendant Carver violated his procedural and substantive due process rights when he found Plaintiff guilty of fabricated disciplinary charges.

Specifically, Plaintiff alleges that Defendant Carver violated his procedural due process rights by denying his requests to be provided witnesses, witness statements, including that of a confidential informant, physical evidence, and staff assistance at his disciplinary hearing. (Compl. 11, Doc. No. 1.) He also claims Defendant Carver violated his substantive due process

3

rights by finding him guilty solely on the hearsay report of Defendant Horne that a confidential informant accused him of conspiring with family members to introduce contraband into Brown Creek Correctional Institution ("BCCI"). (Compl. 12.)

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Standard analysis under the Due Process Clause "proceeds in two steps: [the Court] first ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so [the Court] asks whether the procedures followed by the State were constitutionally sufficient." Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (citing Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1989)). "A liberty interest may arise from the Constitution itself" or "from an expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (citations omitted); see also Sandin v. Conner, 515 U.S. 472, 483–84 (1995) ("States may under certain circumstances create liberty interests which are protected by the Due Process Clause." (citation omitted)). If no liberty or property interest is at stake, however, the Constitution does not require due process. See Austin, 545 U.S. at 221.

The following facts are not in dispute. On January 19, 2016, Defendant Horne reported that she had received confidential, reliable information from a source that had previously provided reliable information, that Plaintiff was conspiring with three family members – his father, brother, and sister – to smuggle cell phones, watches and tobacco into BCCI. (Offense and Disciplinary. Rpt., Def.'s Ex. 4Q 1, Doc. No. 39-3.) Two administrative disciplinary charges were lodged against Plaintiff – attempt to possess cell phones and watches, in violation of NCDPS Disciplinary Offenses § .0202(a)(A99) & (A16), and attempt to possess tobacco, in

4

violation of NCDPS Disciplinary Offenses § .0202(b)(B99) & (B16). (Id.; NCDPS Inmate Disciplinary Procedures, Def.'s Ex. 4P, Doc. No. 39-2.) On January 26, 2016, Defendant Carver presided over Plaintiff's disciplinary hearing, found him guilty of both offenses, and imposed the following punishments, totaling: 60 days of segregation, loss of 20 days sentence-reduction credits, 70 hours of extra duty, a 180-day suspension of canteen and radio privileges, and a 120-day suspension of telephone and visitation privileges. (Offense and Disciplinary. Rpt. 1-2.)

The Complaint does not identify a liberty interest at stake. The Court notes, however, that the Supreme Court has recognized that some inmates have a protected liberty interest in "good-time" or sentence-reduction credits. See Wolff v. McDonnell, 418 U.S. 539, 557 (1974) ("[T]he State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.") That is not the case, however, for Plaintiff, who is serving a life sentence. Under North Carolina law, sentence reduction credits do not shorten the length of a life sentence but merely apply to custody status, parole eligibility, and potential commutation. Jones v. Keller, 698 S.E.2d 49 (N.C. 2010). Therefore, an inmate sentenced to life imprisonment in North Carolina does not have a liberty interest in sentence reduction credits. See Waddell v. Dep't of Corr., 680 F.3d 384, 395 (4th Cir. 2012).

The Supreme Court also has held that prisoners have a liberty interest in avoiding confinement conditions that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Turning to the punishments specifically imposed by Defendant Carver, disciplinary segregation that does

not affect the duration of the inmate's prison sentence, rarely presents the type of deprivation that implicates a constitutional liberty interest giving rise to due process protections. Id. at 486-87; see also Incumaa v. Stirling, 791 F.3d 517, 531 (4th Cir. 2015) (holding that administrative segregation from the general population does not implicate a protected liberty interest absent a showing of specific facts that conditions of confinement are significantly more onerous). As noted, Plaintiff is serving a life-sentence. Consequently, the disciplinary segregation imposed could not have affected the duration of his sentence. Furthermore, Plaintiff alleges no facts establishing that he experienced conditions during his temporary placement in segregation that "were atypical and significantly harsh compared to [those of] the general population," Incumaa, 791 F.3d at 528–29 (noting that the general prison population is the "touchstone" in cases where inmate was sentenced to confinement in the general population and later transferred to security detention). Finally, temporary suspension of privileges does not implicate a constitutionally protected liberty or property interests. See Creel v. Hudson, No. 2:14-CV-10648, 2017 WL 4004579, at *7 (S.D.W. Va. Sept. 12, 2017) (unpublished) (citation omitted).

The Court is left, then, with Plaintiff's allegation that the disciplinary charges were fabricated by Defendant Horne in retaliation for his filing Grievance # 01231. A false disciplinary charge by itself does not violate an inmate's right to due process. See Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986) ("The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. The plaintiff, as all other prison inmates, has the right not to be deprived of a protected liberty interest without due process of law."). On the other hand, at least one circuit court has held that when prison disciplinary hearings are used to retaliate against prisoners for their exercise of a constitutional right, such proceedings can violate

due process. See Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002). In those situations, however, "so long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim." Id.; see also Freeman, 808 F.2d at 953 (concluding due process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly falsified evidence and groundless misconduct reports).

The minimum due process requirements for prison disciplinary proceedings are: (1) advance written notice of the charges; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where the inmate is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. See Wolff v. McDonnell, 418 U.S. 539, 564-71 (1974). There is no constitutional right to confront and cross-examine witnesses or to retain and be appointed counsel. See Baxter v. Palmigiano, 425 U.S. 308, 322 (1976); Brown v. Braxton, 373 F.3d 501, 505-06 (4th Cir. 2004). Moreover, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." Superintendent, Mass. Correctional Institute v. Hill, 472 U.S. 445, 455 (1985).

It is undisputed that Plaintiff received: 1) written notice of the charges against him more than 24 hours before his disciplinary hearing (Not. of Charges & Rights, Def.'s Ex. 4Q, Doc. No. 39-3 at 10-11); 2) a hearing where he was afforded the right to call witnesses and present evidence (NCDPS R. of Hr'g, Def.'s Ex. 4Q, Doc. No. 39-3 at 4); and 3) a written statement summarizing the evidence developed at the hearing, identifying the evidence relied on, and

stating the reasons for taking disciplinary action (Id.). Defendant Horne's and the investigating officer's statements were read during the hearing, and Defendant Carver reviewed Grievance No. 01231, based on Plaintiff's allegation of retaliation. (R. of Hr'g, Doc. No. 39-3 at 4.)

Although Plaintiff alleges Defendant Carver denied his requests to be provided witnesses, witness statements, including that of the confidential informant, physical evidence, and staff assistance at his disciplinary hearing, the disciplinary hearing record states Plaintiff did not identify who he wanted called as live witnesses or what physical evidence he wanted produced at the hearing. (R. of Hr'g, Doc. No. 39-3 at 4.) The investigating officer's report also shows Plaintiff requested that live witnesses be present and physical evidence be reviewed at his hearing but did not provide any witness names or identify any specific physical evidence he wanted reviewed. (Pl's State., Def.'s Ex. 4Q, Doc. No. 39-3 at 11.) Nothing in the disciplinary hearing record indicates any physical evidence was presented at the hearing.

While the record shows Plaintiff requested to either review the confidential informant's statement or that a statement be obtained from the confidential informant (id.), Defendant Carver denied that request "due to security reasons" (R. of Hr'g, Doc. No. 39-3 at 4). Finally, the disciplinary hearing record indicates Plaintiff did not request staff assistance at the hearing. (Id.) The investigating officer's report shows that Plaintiff checked both the "yes" and "no" boxes in response to a question asking whether he requested staff assistance at his hearing. (Pl's State., Doc. No. 39-3 at 11.) Plaintiff's pleadings demonstrate he is not illiterate, and he has not alleged the disciplinary proceedings involved complex issues.

There is insufficient evidence in the record for a jury to find that Defendant Carver denied Plaintiff the procedural due process rights set out in Wolff, 418 U.S. at 564-71. See Anderson, 477 U.S. at 249. Liberally construed, however, the Complaint also alleges that

8

Defendant Carver's findings of guilt were not supported by "some evidence." Specifically, Plaintiff accuses Carver of convicting him based solely on the hearsay statements of the confidential informant. (Compl. 12.)

According to the record of Plaintiff's disciplinary hearing, Defendant Carver found Plaintiff guilty of the offenses "based upon the reporting party's statement and investigating officer's report." (R. of Hr'g, Doc. No. 39-3 at 4.) The reporting party's statement was:

> On 01/19/16 at approximately 12:50, I, Sergeant Samantha Horne, received confidential information (DPS) from a confidential reliable source that has proven to be reliable in the past, that inmate Kareem Locke #0244563 was conspiring with his father, Robert Locke, brother, Phillippe Locke (V275721), and his sister Fanisha Evette Locke (V101588) to introduce contraband into the facility. Specifically-cell phone watches and tobacco. The confidential information was placed in an envelope . . . and placed in the assistant superintendent's office, Mr. Kenneth Diggs, marked confidential

(Wit. Horne State., Def.'s Ex. 4Q, Doc. No. 39-3 at 9.) Karen Eller was assigned to investigate the allegations. (Inv. Rpt., Def.'s Ex. 4Q, Doc. No. 39-3 at 8.) Eller verified that the information provided by the confidential informant was in an envelope, marked confidential, in the assistant superintendent's office. (Id., Doc. No. 39-3 at 7.)[3]

Defendant Carver has filed an affidavit in support of his summary judgment Motion. (Doc. No. 39-1.) In it, he states that on or before the date of the hearing, he reviewed the confidential information that formed the bases of the disciplinary charges, that the information is classified and confidential, and that disclosure to Plaintiff "would be detrimental to institutional security because it would reveal sources and expose internal institutional investigatory methods

---

[3] Eller's report also states, "[t]he physical evidence supports the reporting party's statement, [and] it is also located in the assistant superintendent's office, Mr. Diggs[.]" (Doc. No. 39-3 at 7.) There is nothing else in the record before this Court indicating that physical evidence was collected. Neither Horne's statement (Doc. No. 39-3 at 9) nor the disciplinary hearing record (Doc. No. 39-3 at 4) mentions collection of physical evidence. Nor does Defendant Carver mention any physical evidence in his affidavit (Doc. No. 39-1). Therefore, the Court will assume for summary judgment purposes that there was no physical evidence corroborating the disciplinary charges.

9

and practices." (Carver Aff. ¶ 13, Doc. No. 39-1.) He also states that the evidence forming the bases of the disciplinary charges at issue was discovered during a separate and unrelated investigation of Plaintiff for other suspected misconduct, that a DPS official provided that information to Defendant Horne, that the source of the evidence of the conspiracy was not another inmate, and that Defendant Horne was not involved in the investigation of Plaintiff's suspected misconduct but merely was a conduit by which to report the conspiracy that was discovered during the course of that investigation. (Carver Aff. ¶ 14.) Carver states further that at Plaintiff's request, he considered and determined that neither the initial investigation nor the charges lodged against him were part of an STG investigation and that Plaintiff's STG classification was wholly independent of the filing of the disciplinary charges. (Carver Aff. ¶¶ 15, 17.)

For his part, Plaintiff has submitted affidavits of his father, brother, and sister, each swearing that he or she did not conspire with Plaintiff to smuggle contraband into BCCI. (Pl.'s Ex. A, Doc. No. 43 at 9-11.) The question before the Court, however, is not whether Plaintiff is guilty of the charges; it is whether he has presented sufficient evidence from which a reasonable jury could conclude there was no evidence supporting Defendant Carver's findings of guilt. See Anderson, 477 U.S. at 249.

The "some evidence" standard is a lenient one, requiring no more than "a modicum of evidence," and is met if there is any evidence in the record that could support the decision. Hill, 472 U.S. at 455–56. Federal courts will not review the accuracy of the disciplinary hearing officer's fact finding de novo or for clear error. See Baker v. Lyles, 904 F.2d 925, 932 (4th Cir. 1990). Rather, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the [disciplinary hearing officer]." Id. (quotation omitted).

The evidence before this Court is that Defendant Carver reviewed the confidential information himself prior to Plaintiff's disciplinary proceedings and that it included more than a bald assertion that Plaintiff was conspiring with his family to smuggle contraband into the prison. It included information about the source of the conspiracy evidence, internal investigatory methods, the identity of the confidential informant,[4] and how the evidence of the conspiracy was discovered. In other words, it included information that ordinarily would be considered in assessing the reliability of the information. See e.g. Sira v. Morton, 380 F.3d 57, 78 (2d Cir. 2004) (In assessing the totality of the circumstances to determine if hearsay information is reliable, "the hearing officer may . . . consider such factors as the specificity of the information, the circumstances under which it was disclosed, and the degree to which it is corroborated by other evidence.") Plaintiff has not produced or identified any evidence contradicting Carver's affidavit.

Nevertheless, the Court need not determine whether Horne's statement vouching for the reliability of the confidential informant, Carver's personal review of the confidential information, and his averments of what the information included are sufficient for a reasonable jury to conclude Plaintiff's convictions were supported by "some evidence." Defendant Carver is entitled to qualified immunity on Plaintiff's substantive due process claim, regardless.

State government officials performing discretionary functions enjoy qualified immunity from liability for civil damages unless: (1) the officer's conduct violated a federal statutory or constitutional right; and (2) the right was clearly established at the time of the conduct, such that (3) an objectively reasonable officer would have understood that the conduct violated that right. Knussman v. Maryland, 272 F.3d 625, 633 (4th Cir. 2001). A plaintiff's claim "survives

---

[4] NCDPS policy and procedures require that the name of the confidential informant be recorded and maintained by the Facility Head/Designee in a confidential file. NCDPS Policy and Procedures, Chapter B, § 0205(l)(2) (2012).

summary judgment, however, only if [the court] answer[s] both questions in the affirmative." Id. "The burden of proof and persuasion with respect to a defense of qualified immunity rests on the official asserting that defense." Meyers v. Baltimore Cty., Md., 713 F.3d 723, 731 (4th Cir. 2013).

To be clearly established, the "contours of the [constitutional] right must be sufficiently clear that a reasonable official would understand what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). "[T]he 'exact conduct at issue need not' previously have been deemed unlawful for the law governing an officer's actions to be clearly established." Sims v. Labowitz, 885 F.3d 254, 262–63 (4th Cir. 2018) (quoting Amaechi v. West, 237 F.3d 356, 362 (4th Cir. 2001)). Instead, the Court "must determine whether pre-existing law makes 'apparent' the unlawfulness of the officer's conduct." Id. (citing Clem v. Corbeau, 284 F.3d 543, 553 (4th Cir. 2002)). (quoting Anderson, 483 U.S. at 640, 107 S.Ct. 3034). "Accordingly, a constitutional right is clearly established for qualified immunity purposes not only when it has been specifically adjudicated but also when it is manifestly included within more general applications of the core constitutional principle invoked." Id. at 263 (quoting Clem, 284 F.3d at 553) (internal quotation omitted).

The core constitutional principle at issue is the right to substantive due process in a prison disciplinary hearing. "The 'contours' of that right, as they pertain to . . . the identification of what qualifies as some . . . evidence in prison disciplinary proceedings . . . must have been delineated with sufficient clarity 'that a reasonable official would understand that what he is doing violates that right.'" Sira, 380 F.3d at 81 (quoting Anderson, 483 U.S. at 640). Neither the Fourth Circuit nor the Supreme Court has clearly defined standards for determining what

constitutes "some evidence" in the context of prison disciplinary hearings.[5]

At the time of Plaintiff's disciplinary proceedings, the law of this circuit recognized a due process requirement that a disciplinary conviction be based on "some evidence," see Baker, 904 at 932, but the Fourth Circuit has never addressed directly the circumstances under which confidential information is sufficient to constitute "some evidence" to sustain punishment under the Due Process Clause. Even if the Court assumes it is clearly established that due process requires some assessment of a confidential informant's credibility, unanswered is whether that assessment must be conducted by the disciplinary hearing officer independently, or whether he or she may rely on the opinion of another person. Also unanswered is the degree to which the confidential informant's knowledge must be first-hand or may be based upon third-party hearsay.

In short, it was not objectively unreasonable for Defendant Carver to think the evidence against Plaintiff was sufficient to satisfy due process. He is entitled to qualified immunity on this claim. Accordingly, summary judgment shall be entered in his favor.

**IT IS, THEREFORE, ORDERED** that Defendant Benjamin Carver's Motion for Summary Judgment (Doc. No. 38) is **GRANTED**, and the Clerk of Court is respectfully instructed to terminate Defendant Carver as party to this action.

Signed: October 31,

Frank D. Whitney
Chief United States District Judge

---

[5] In an unpublished opinion, the Fourth Circuit held that "[i]f a disciplinary conviction for possession of contraband is based on the presence of contraband in a particular location, the constructive possession rule provides "some evidence" of guilt only when relatively few inmates have access to the area. McClung v. Hollingsworth, No. 06-6699, 2007 WL 1225946, at *3 (4th Cir. Apr. 26, 2007).