UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cv-00337-FDW

| KAREEM LOCKE, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| vs. | ) | ORDER |
| GEORGE SOLOMON, et al., | ) |  |
| Defendants. | ) |  |

**THIS MATTER** is before the Court upon pro se Plaintiff Kareem Locke's combined Motion to Amend his 42 U.S.C. § 1983 Civil Rights Complaint and to Join Parties. (Doc. No. 62.)

I.   **RELEVANT BACKGROUND**

Plaintiff is a prisoner of the State of North Carolina. According to Plaintiff, he was placed on a North Carolina Department of Public Safety ("NCDPS") "watch list" for suspected gang membership and affiliation on August 3, 2009. (Compl. 7, Doc. No. 1.) Plaintiff alleges that on December 11, 2015, Daniel Hatley, a Security Risk Group Intelligence Officer ("SRGIO") at Brown Creek Correctional Institution ("BCCI"), informed Plaintiff that he was going to recommend Plaintiff be taken off the watch list and given a Security Threat Group ("STG") level classification based on Plaintiff's membership in a gang.[1] Plaintiff filed a grievance on December 16, 2015, complaining of Hatley's decision and pointing out that he had held prison jobs, completed all assigned tasks, and had not been charged with any gang-related infraction since being placed on the watch list. (Grievance # 3510-2015-5CDM-01231

---

[1] The acronyms "STG" and "SRG" (Security Risk Group) are used interchangeably in the Complaint and other documents filed in this action.

1

("Grievance # 01231"), Doc. No. 1 at 16.)

On January 6, 2016, Hatley informed Plaintiff that he had been classified as STG Level III, with accompanying restrictions on visitation and phone-calls, among other things. Plaintiff alleges Hatley told him that he was classified as Level III because of his "rank" within the identified gang. (Compl. 7.)

On January 19, 2016, Plaintiff was charged with two infractions – attempting to possess cell phones and watches and attempting to possess tobacco. (Compl. 8.) The charges were levied based upon allegations purportedly made by a confidential informant to Defendant Samantha Horne, an SRG Officer at BCCI. (Compl. 8; Off. and Disc. Rpt., Doc. No. 1 at 22.) Benjamin A. Carver, a Disciplinary Hearing Officer ("DHO") at Alexander Correctional Institution, presided over Plaintiff's January 26, 2016 disciplinary hearing on the two infractions. Carver found Plaintiff guilty of both infractions and punished him accordingly. (Compl. 8.)

Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983, on June 21, 2017, naming George Solomon, the NCDPS Director of Prisons during the relevant period, Christopher Rich, identified by Plaintiff as the Deputy Head of the NCDPS SRG Office, Kenneth Diggs, identified by Plaintiff as the Assistant Superintendent of Custody at BCCI, Daniel Hatley, Benjamin Carver, and Samantha Horne as Defendants. The Court conducted an initial review of the Complaint pursuant to 28 U.S.C. § 1915(e)(2), and dismissed Solomon, Rich, and Diggs as Defendants because Plaintiff had not alleged any acts on their part. (Initial Rev. Order 6, Doc. No. 7 (citing Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985)).) The Court also dismissed Plaintiff's claim that the STG classification and accompanying restrictions imposed upon him violated his due process rights. (Initial Rev. Order 4-5.)

Subsequently, the Court granted Defendant Hatley judgment on the pleadings on the only

remaining claim against him – that Hatley raised Plaintiff's security classification in retaliation for filing Grievance # 01231. (Doc. No. 32.) The Court also granted Defendant Carver summary judgment on Plaintiff's claims that Carver violated his right to procedural due process by depriving him of information at the disciplinary hearing that would have proved the infraction allegations to be false and violated his right to substantive due process by finding him guilty of both infractions although no evidence of guilt was presented at the hearing, see Compl. 10-13. (Doc. No. 48.) Plaintiff entered a notice of appeal on November 16, 2018 (Doc. No. 50), which the Fourth Circuit Court of Appeals dismissed, Locke v. Carver, No. 18-7400 (4th Cir. May 2, 2019), Doc. No. 20.

Plaintiff has filed this combined Motion to Amend and to Join Parties (Doc. No. 62), and Defendant Horne, the only remaining defendant in this action, has filed a response in opposition (Doc. No. 69). For the reasons that follow, Plaintiff's combined Motion shall be denied.

## II. DISCUSSION

### A. Motion to Amend

In his Motion to Amend, Plaintiff explains that his proposed amendments pertain to "disputed claims that Plaintiff has stated before . . . [t]hat the Defendants or the courts did not answer or address." (Mot. to Amend 1, Doc. No. 62) (verbatim). Plaintiff alleges that the Court has not addressed his claim that the STG status creates an "atypical and significant hardship" with respect to his ability to be paroled or his claim that:

> [t]he classification status level and sanctions assigned/placed on me were obtained in violation of Due Process of law U.S. Const. Amend. 1, 5, 6, 8, 14; N.C. Const. Art. 1 sec. 19. 21, 23 as well as other provisions of the U.S. and N.C. Constitutions, like the 4th Amendment a person's right to privacy. Which . . . section N.C.D.P.S. policy and procedures Chpt. C. Sec. 1900-1904. violates.

(Mot. to Amend 4, 5) (verbatim). Although captioned as a Motion to Amend, it essentially is a

3

motion for the Court to reconsider its prior ruling that Plaintiff's STG classification did not violate his right to due process.

The Court dismissed Plaintiff's due process claims on initial review, stating that "a prisoner has no liberty interest under the due process clause . . . to be held in a specific security classification, barring some showing by the prisoner that his confinement posed an atypical and significant hardship in relationship to the ordinary incidents of prison life." (Initial Rev. Order 4 (citing Wilkinson v. Austin, 545 U.S. 209 (2005); Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976); Hewitt v. Helms, 459 U.S. 460, 468 (1976)).) The Court found that the facts alleged in the Complaint would not lead a court to reasonably infer that "the change in [Plaintiff's] security classification level poses 'an atypical and significant hardship in relationship to the ordinary incidents of prison life.'" (Initial Rev. Order 4-5.) The Court also held that to the extent Plaintiff claimed a due process violation based upon Defendants' alleged failure to comply with NCDPS policy statements or procedures, he had failed to state a claim upon which relief may be granted because "[s]tate officials' failure to abide by state procedural regulations is not a federal due process issue, and . . . not actionable under § 1983." (Id. at 5) (citing Riccio v. Cty. of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990)). Thus, contrary to Plaintiff's assertions, the Court addressed his claim that imposition of the Level III STG classification and accompanying restrictions violated his right to due process.

Plaintiff's other allegation is that the Court has not addressed his claim that the STG status creates an "atypical and significant hardship" with respect to his ability to be paroled. In the Complaint, Plaintiff's due process claim included the assertion that his STG designation deprived him of "any meaningful opportunity/consideration for parole [and]/or MAPP contract consideration, minimum custody level promotion, [and]/or normal visitation, and phone call

4

privileges." (Compl. 10.) The Court implicitly included those factors when it concluded on initial review that the facts alleged in the Complaint would not lead a court to reasonably infer that Plaintiff's STG status poses "an atypical and significant hardship in relationship to the ordinary incidents of prison life." Nevertheless, the Court will specifically address the parole issue here.

The Fourteenth Amendment's right to procedural due process guarantees citizens the protection of adequate procedures before allowing a state to deprive them of their life, liberty, or property. Liberty interests protected by the Fourteenth Amendment "may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." Austin, 545 U.S. at 221 (citations omitted); accord Wolff v. McDonnell, 418 U.S. 539, 556–57 (1974). The Supreme Court recognizes a narrow category of state-created liberty interests that:

> will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin v. Conner, 515 U.S. 472, 483–84 (1995).

The Supreme Court addressed the atypicality standard in Wilkinson v. Austin, a case in which the plaintiffs were assigned to Ohio's supermax facility. A unanimous Court held that incarceration in the supermax facility implicated the plaintiffs' liberty interests. See Austin, 545 U.S. at 224.

"The Court emphasized three factors in its analysis: '(1) the magnitude of confinement restrictions; (2) whether the administrative segregation is for an indefinite period; and (3) whether assignment to administrative segregation had any collateral consequences on the inmate's sentence.'" Incumaa v. Stirling, 791 F.3d 517, 530 (4th Cir. 2015), as amended (July 7,

2015). With respect to the first factor, the Court found that "incarceration in Supermax was 'synonymous with extreme isolation'; 'every aspect of an inmate's life [was] controlled and monitored'; inmates were 'deprived of almost any environmental or sensory stimuli and of almost all human contact'; and exercise was permitted only indoors for one hour per day." Id. (quoting Austin, 545 U.S. at 214). Next, "because inmates were confined to a supermax facility for an indefinite period, their interest in receiving meaningful procedural review was magnified." Id. (citing Austin, 545 U.S. at 224). And third, "assignment to Supermax 'disqualifie[d] an otherwise eligible inmate for parole consideration.'" Id. (quoting Austin, 545 U.S. at 224). "The Court concluded that, '[w]hile any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context.'" Id. (quoting Austin, 545 U.S. at 224).

Plaintiff's claim that his Level III STG classification imposes atypical and significant hardship in relation to the ordinary incidents of prison life, see id., fails on its face. See Fed. R. Civ. P. 12(c). Applying the first Austin factor, the only confinement restrictions Plaintiff identifies in connection with his Level III STG classification are non-contact visitation and telephone restrictions. (Compl. 7.) He does not allege that he has been denied all visitation and all phone privileges. Furthermore, "the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). NCDPS records show that Plaintiff has a medium custody level and that he is housed with the regular prison population.[2] He has failed to identify any confinement restrictions associated with his medium custody classification that are outside the

---

[2] See the NCDPS Offender Public Information website, available at https://webapps.doc.state.nc.us/opi/offendersearch.do?method=view (Locke, Kareem, OPUS # 0244563, last viewed 1/23/2020).

6

ordinary incidents of prison life.

As for the second Austin factor, Plaintiff makes no allegations related to the expected duration of his Level III classification. For example, he does not allege either that his security status is permanent or that his security status may be lowered if he meets certain criteria. Plaintiff's only allegation related to duration is that because of his STG status, a security alert will remain permanently in his inmate record, regardless of any future change in his security classification.

Finally, with respect to collateral consequences, Plaintiff claims that the STG classification has rendered him ineligible for parole. "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7 (1979); cf. Hawkins v. Freeman, 195 F.3d 732, 747 (4th Cir.1999) (indicating that there is no fundamental right to parole release). Plaintiff contends, however, that prisoners convicted of first-degree murder and sentenced to life in prison under the North Carolina Fair Sentencing Act ("FSA") have a liberty interest in being released on parole. (Mot. to Am. 1.)

A prisoner convicted of first-degree murder and sentenced to life in prison under the FSA becomes eligible for parole consideration after serving 20 years of his sentence. See N.C. Gen. Stat. § 15A-1371(a)(1) (1981) (amended 1993; repealed 1994).[3] If the state Post–Release Supervision and Parole ("PRSP") Commission (formerly the Parole Commission) denies parole at that point, it must consider the prisoner for parole every three years thereafter. See § 15A-1371(b)(2) (repealed 1993); Act of July 18, 2008, 2008 N. C. Sess. Law 2008-133 (H.B. 1624). The

---

[3] Although the FSA was repealed, the parole provisions remain applicable to sentences based on offenses that occurred before October 1, 1994. See Structured Sentencing Act, ch. 538, sec. 56, 1993 N. C. Sess. Laws.

decision to release an inmate on parole was, and continues to be, solely in the discretion of the PRSP Commission. See N.C. Gen. Stat. § 15A-1371. And where parole hinges on the "discretionary decisions of parole authorities," parole applicants "possess no entitlement [to parole], but only a desire, that a parole board will decide in their favor." Vann v. Angelone, 73 F.3d 519, 522 (4th Cir. 1996).

Thus, the FSA did not create a liberty interest in release on parole for prisoners convicted of first-degree murder and sentenced to life in prison under the Act. To the extent the FSA created a liberty interest for that group, it is a liberty interest in eligibility for consideration for parole upon completion of 20 years of the life sentence. If parole is denied, the inmate has a continuing liberty interest in consideration for parole at every subsequent interval required by statute.

Plaintiff asserts, however, that FSA inmates sentenced to life in prison "will not [and] cannot be paroled" unless they have minimum or medium custody status and that inmates with an STG Level III classification will not be promoted to minimum or medium custody. (Mot. to Am. 2.) Plaintiff also contends that his STG Level III status makes him ineligible for the Mutual Agreement Parole Program ("MAPP").[4] (Id. at 3.) Lastly, he asserts that NCDPS policy and procedures require that security alert information be provided to any criminal justice agent, including the PRSP Commission, thereby depriving him of any meaningful consideration for parole. (Id. at 6.)

As noted, NCDPS records show Plaintiff has a medium custody classification notwithstanding his STG status. See fn. 2, supra. By his own metric, then, Plaintiff can be paroled. Next, according to Plaintiff's own evidence, MAPP's eligibility criteria does not include a prohibition on having an STG designation. See NCDPS Policy and Procedures,

---

[4] The MAPP is a program that allows inmates the opportunity to participate in community-based programs for observation prior to release on parole.

Chapter E, sec. .1702 (a) (Doc. No. 62 at 18).  Finally, whether an inmate has a security alert in his record is only one of the many factors the PRSP Commission considers when deciding whether an inmate is a promising candidate for parole.  Other factors include the official crime version (narrative of events of crime of conviction), prison infraction history, gang membership, psychological evaluations, custody level history, visitation history, and home plan.  See Hayden v. Keller, 134 F. Supp. 3d 1000, 1002 (E.D.N.C. 2015).

Plaintiff was convicted of first-degree murder and sentenced to life in prison in 1991.  See fn. 2, supra.  Consequently, he should have become eligible for parole consideration in or around 2011, at the latest.  Plaintiff's STG Level III status was imposed in 2016, and he does not allege that the PRSP Commission has refused to consider him for parole since the STG Level was imposed.  Moreover, the Fourth Circuit has determined that even where a state statute establishes a liberty interest in parole consideration, due process requires only that parole authorities "furnish to the prisoner a statement of [their] reasons for denial of parole."  Vann, 73 F.3d at 522 (citation omitted).  Plaintiff does not allege that the PRSP has failed to notify him of its reasons for denying him parole.

In sum, Plaintiff has failed to allege facts from which the Court reasonably can infer that he has a liberty interest in release on parole.  To the extent Plaintiff has a liberty interest in consideration for parole, he has failed to allege facts from which the Court reasonably can infer that he has been denied the minimal process he is due.  Thus, Plaintiff still has failed to state a claim that his STG classification violated his right to due process.

**B.    Motion to Join**

Plaintiff seeks to reinstate Christopher Rich as a defendant in this action.  He alleges Rich had the final say in approving his STG Level III status, which he claims violated his right to due process.  See Mot. to Join (Doc. No. 62) at 2.  The Court has concluded twice now that Plaintiff has failed to state a due process claim with respect to imposition of STG status.  Accordingly,

Plaintiff's Motion to Join Christopher Rich as a defendant in this action shall be denied.

**IT IS, THEREFORE, ORDERED** that Plaintiff's combined Motion to Amend his 42 U.S.C. § 1983 Civil Rights Complaint and to Join Parties (Doc. No. 62) is **DENIED**.

Signed: January 30,

Frank D. Whitney
Chief United States District Judge