UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cv-00337-FDW

| KAREEM LOCKE, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| vs. | ) | ORDER |
| DANIEL HATLEY, et al., | ) |  |
| Defendants. | ) |  |

**THIS MATTER** is before the Court upon Defendant Samantha Horne's Motion for Summary Judgment. (Doc. No. 75.)

## I. RELEVANT BACKGROUND

### A. Condensed Procedural Background

Plaintiff is a prisoner of the State of North Carolina. He filed this action on June 21, 2017, pursuant to 42 U.S.C. § 1983, for events he alleges transpired while he was detained at Brown Creek Correctional Institution ("BCCI"). Plaintiff named the following individuals as Defendants: (1) George Solomon, the North Carolina Department of Public Safety ("DPS") Director of Prisons during the relevant period; (2) Christopher Rich, identified by Plaintiff as the Deputy Head of the DPS Security Risk Group ("SRG") Office; (3) Kenneth Diggs, the Assistant Superintendent of Custody at BCCI; (4) Daniel Hatley, identified as a Security Risk Group Intelligence Officer ("SRGIO") at BCCI; Samantha Horne, a former DPS officer at BCCI; and Benjamin Carver, a Disciplinary Hearing Officer ("DHO") at Alexander Correctional Institution.

The Court conducted an initial review of the Complaint pursuant to 28 U.S.C. § 1915(e)(2), and dismissed Solomon, Rich, and Diggs as Defendants, finding Plaintiff had failed

to state claims against them.  See Initial Rev. Order (Doc. No. 7) at 6 (citing Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985)).  The Court also dismissed Plaintiff's claims that a Security Threat Group ("STG")[1] classification and accompanying restrictions imposed upon him violated his due process rights.  See id. at 4-5.  Plaintiff's First Amendment retaliation claims against Defendants Hatley and Horne, and Plaintiff's procedural and substantive Due Process claims against Defendant Carver survived initial review.

On February 28, 2018, Defendants Hatley and Carver moved for judgment on the pleadings.  (Doc. No. 17.)  The Court granted the motion as to Hatley on the only remaining claim against him – that Hatley raised Plaintiff's security classification in retaliation for Plaintiff filing a grievance against him – but denied judgment on the pleadings as to Carver.  (Doc. No. 32.)  Thereafter, the Court entered a pre-trial order and case management plan for discovery and motions' deadlines.  (Doc. No. 33.)

On May 21, 2018, Defendant Carver moved for summary judgment on Plaintiff's claims that Carver violated his rights to procedural due process and to substantive due process during disciplinary proceedings.  (Doc. No. 38.)  The Court then entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court.  (Doc. No. 41.)  Plaintiff was specifically advised that if he had any evidence to offer to show that there is a genuine issue for trial, he must present it to the Court "in a form which would otherwise be admissible at trial, i.e., in the form of affidavits or unsworn declarations."  Roseboro Order (Doc. No. 41) at 2.  Plaintiff filed a response in opposition to the

---

[1] The acronyms "STG" and "SRG" are used interchangeably in the Complaint and other documents filed in this action.

summary judgment motion, affidavits from his father, brother, and sister, and the record of his disciplinary hearing. (Doc. No. 43.) The Court granted Carver summary judgment on the due process claims. (Doc. No. 48.)

Defendant Horne was not served process in this action until August 27, 2018, so the Court issued a second pre-trial order and case management plan for discovery and motions' deadlines. (Doc. No. 61.) Plaintiff filed a combined Motion to Amend and to Join Parties, seeking to relitigate the Court's initial review dismissal of Plaintiff's due process claims related to his STG classification, Doc. No. 62, and three motions to compel discovery from third-parties, Doc. No. 63-65. The Court denied the combined Motion, see Doc. No. 81, and the motions to compel discovery.

On June 11, 2019, Defendant Horne filed a Motion for Summary Judgment, seeking judgment as a matter of law on Plaintiff's claim that she fabricated disciplinary infractions against him in retaliation for his filing a grievance against her. (Doc. No. 75.) Horne seeks summary judgment on two grounds: (1) Plaintiff has not and cannot forecast evidence of retaliation; and 2) this Court already has determined that the retaliation claim is without merit. See Summ. J. Mot. (Doc. No. 75) at 6-9.

Before the Court issued a Roseboro order, Plaintiff filed a response in opposition to Horne's summary judgment motion, see Doc. No. 78. Horne filed a reply in support of her motion, see Doc. No. 79, and Plaintiff filed an surreply without permission of the Court, see Doc. No. 80; LCvR 7.1(e) ("Surreplies are neither anticipated nor allowed by this Rule, but leave of Court may be sought to file a surreply when warranted.").

These matters are ripe for disposition.

**B. Factual Background**

**1. Defendant Horne's Forecast of Evidence**

In support of Defendant Horne's motion for summary judgment, she submits her

Declaration and the record of Plaintiff's January 26, 2016 Administrative Disciplinary Proceeding ("ADP"). (Doc. No. 77-1.) She also submits Benjamin J. Carver's affidavit and the exhibits to it, specifically the DPS Inmate Disciplinary Procedures and the record of Plaintiff's January 26, 2016 ADP. (Doc. No. 77-2.)

Defendant Horne's evidence shows she worked for the DPS as a corrections sergeant at BCCI during the relevant times. See Horne Decl. (Doc. No. 77-1) at ¶ 3. On January 19, 2016, Horne received information that Plaintiff was conspiring with his father, Robert Locke, brother Phillippe Locke, and his sister, Fanisha Evette Locke, to introduce contraband, specifically cell phones, watches, and tobacco, into the facility. See id. at ¶ 5. Evidence of the conspiracy was discovered during an investigation of Plaintiff for unrelated, suspected misconduct. See Carver Aff. (Doc. No. 77-2) at ¶ 14; Horne Decl. (Doc. No. 77-1) at ¶ 9. Although the investigation did not uncover evidence of the suspected misconduct, it did uncover evidence that Plaintiff was conspiring with family members to smuggle cell phones, watches and tobacco into BCCI. See See Carver Aff. (Doc. No. 77-2) at ¶ 14. A DPS official, who had proven reliable in the past, was the source who provided Horne the information about the conspiracy, see id.; Horne Decl. (Doc. No. 77-1) at ¶ 5; the source of the information was not another inmate, see Carver Aff. (Doc. No. 77-2) at ¶ 14. The information and its source were considered confidential at the time; the confidential information was placed in an envelope marked "Confidential" and placed in Assistant Superintendent Kenneth Diggs's office. See Horne Decl. (Doc. No. 77-1) at ¶ 6; Inv. Officer's Rpt., Horne Decl. Ex. A (Doc. No. 77-1) at 23.

Karen Eller was the investigating officer for the ADP. See Eller's ADP Rpt., Carver Aff. Ex. 4-Q (Doc. No. 77-2 at 36). Eller took statements from Horne and Plaintiff, reviewed the confidential information, which included the confidential informant's statement and physical

evidence, confirmed that both were locked in Diggs's office, and concluded that the physical evidence supported Horne's report.  See id.  At Eller's recommendation, see id. at 24, Plaintiff was charged with attempting to possess cell phones and watches and attempting to possess tobacco.  Defendant Horne took no part in the investigation of the unsubstantiated suspected misconduct or the investigation of the conspiracy to introduce contraband into BCCI, and other than providing a written statement to Eller and putting the confidential information in Diggs's office, Horne took no part in the ADP.  See Horne Decl. (Doc. No. 77-1) at ¶ 7; Carver Aff. (Doc. No. 77-2) at ¶ 14.

On January 26, 2016, DHO Benjamin Carver conducted a disciplinary hearing on the charges.  On or before the hearing, Carver reviewed the confidential information that formed the basis for the administrative charges.  See Carver Aff. (Doc. No. 77-2) at ¶ 13.  Carver did not read the confidential information to Plaintiff at the hearing or allow him to see it because the information was classified and disclosure of the information to Plaintiff would be detrimental to institutional security by revealing sources and exposing internal institutional investigatory methods and practices.  See id.

At Plaintiff's request, Carver considered and determined that neither the initial investigation of Plaintiff for suspected misconduct nor the disciplinary charges lodged against him were part of an STG investigation and, therefore, Plaintiff's STG classification was wholly independent of the disciplinary charges.  See id. at ¶ 15; Horne Decl. (Doc. No. 77-1) at ¶ 9.  Also at Plaintiff's request, Carver reviewed Grievance No. 01231 and determined that the disciplinary charges were not brought in retaliation for Plaintiff having lodged the grievance. See Carver Aff. (Doc. No. 77-2) at ¶ 17.

Horne was not the source of the confidential information.  See Horne Decl. (Doc. No. 77-

1) at ¶ 7. She did not report the information in retaliation for Plaintiff filing Grievance No. 01231. See id. at ¶ 9.

### 2. Plaintiff's Forecast of Evidence

With his response opposing Horne's summary judgment motion, Plaintiff submits copies of the following documents[2]:

a. Grievance No. 01231, see Compl. (Doc. No. 1 at 16-18), and Step One administrative response, see Step One Resp., Pl.'s Ex. A-16 (Doc. No. 78-1 at 31);

b. Samantha Horne's responses to questions 1-12 of Plaintiff's first set of interrogatories, see Pl.'s Ex. A9 (Doc. No. 78-1 at 12-14);

c. Plaintiff's January 7, 2016 Inmate Request for Information ("IRI") and January 18, 2016 IRI, see Pl.'s Exs. A-10, A-11 (Doc. No. 78-1 at 15-16);

d. Affidavits of Plaintiff's father, brother, and sister, each swearing that he or she did not conspire with Plaintiff to smuggle contraband into BCCI, see Pl.'s Ex. A-17 (Doc. No. 78-1 at 44-46); and

e. Portions of the record of Plaintiff's Jan. 26, 2016 ADP; excerpts of Benjamin Carver's Affidavit; excerpts of Defendant Horne's Memorandum in support of her summary judgment motion; and excerpts of DPS Inmate Disciplinary Procedures.

Plaintiff's evidence shows that while Defendant Horne was at BCCI, she was affiliated with the DPS Special Operations and Intelligence ("SOI") Unit in Raleigh. Her responsibilities at BCCI included observing and gathering any information that would be considered gang activity and forwarding that information to the SOI Unit. See Horne Resp. to Interrog. Nos. 2-3, Pl.'s Ex. A9 (Doc. No. 78-1 at 12).

---

[2] The Court does not include Plaintiff's exhibits that are irrelevant to Horne's summary judgment motion (e.g. DPS policy and procedures for promotion of felons). The Court also does not include as supporting evidence Plaintiff's document captioned "Affidavit Opposing Defendant['s] Motion for Summary Judgment," see Doc. No. 78 at 4. An affidavit is a written statement under oath; that is, a statement prepared in writing and sworn before a notary public. Plaintiff's "Affidavit" is neither an affidavit nor an unsworn statement, made and signed under penalty of perjury; it is an argument in opposition to Defendant's Horne's summary judgment motion, see id. at 4-23.

On December 11, 2015, SRGIO Hatley informed Plaintiff that he was going to recommend Plaintiff be given an SRG level. See Grievance No. 01231 (Doc. No. 1 at 16). On December 16, 2015, Plaintiff submitted Grievance No. 01231, arguing that an STG level was not warranted, asserting that he was not a gang member, alleging that the STG upgrade was part of a campaign of harassment, and alleging that black inmates were disproportionately validated as gang members compared to white and Latino inmates. See id. at 16-18. On December 29, 2015, Defendant Horne responded to Grievance No. 01231, stating that as of that date, Plaintiff was a Level Associate for the United Blood Nation ("UBN"). See Step One Resp., Pl.'s Ex. A-16 (Doc. No. 78-1 at 31). On January 6, 2016, Hatley informed Plaintiff that his new classification was SRG Level III. See Jan. 7, 2016 IRI (Doc. No. 1 at 19).

Defendant Horne and Hatley worked together gathering the information in Plaintiff's SRG packet that was submitted to the SOI Unit. See Horne Resp. to Interrog. Nos. 6, 11 (Doc. No. 78-1 at 12, 14). Some of the information gathered and submitted to the SOI Unit was that Plaintiff had been observed attending meetings with validated UBN inmates at different times and locations and that Plaintiff appeared to be "leading" (i.e. doing most of the talking) some of those meetings. See id. at Interrog. No. 11 (Doc. No. 78-1 at 14). The SOI Unit, not Horne or Hatley,d determined Plaintiff's SRG level. See id. at Interrog. Nos. 5-6, 11 (Doc. No. 78-1 at 12, 14); see also Pl.'s Jan. 18, 2016 IRI, see Pl.'s Ex. A-11 (Doc. No. 78-1 at 16) (informing Plaintiff that the SOI Unit had determined his SRG level).

On January 19, 2016, Defendant Horne reported receiving information from a confidential source who had proved reliable in the past that Plaintiff was conspiring with his father, brother, and sister to introduce contraband, specifically cell phones, watches, and tobacco, into BCCI. See Jan. 26, 2016 Offense & Disciplinary Rpt. at 1 (Doc. No. 1 at 22). The

7

confidential information provided to Horne was a transcript of a telephone conversation between Plaintiff and two of his family members about arranging a meeting between the family members and a third person - believed to be a BCCI staff-member although that was never confirmed – for the purpose of bringing cell phones, tobacco and "K2" into the facility.  See Horne Resp. to Interrog. No. 9 (Doc. No. 78-1 at 14).  The other confidential information Horne was provided were the circumstances that led to the request for the transcript.  See id.  Specifically, Plaintiff was seen on the dorm cameras talking on a wall-mounted phone, and a transcript was requested for that phone for the date and time Plaintiff was observed using it; Plaintiff used another inmate's "pin number" to make the call, and the call was made to a phone number that Plaintiff's prison records showed belonged to Plaintiff's father.  See id.

Prior to the disciplinary hearing, Plaintiff was informed of the substance of Horne's report, and at the hearing, the DHO read Horne's report to Plaintiff.  Plaintiff was not provided, either before or during the hearing, any information about the identity of the confidential informant; any specifics of what the confidential information was other than what was in Horne's report; or any information regarding the existence of evidence that corroborated the information provided by the confidential informant.  Plaintiff's father, brother, and sister deny having ever conspired with Plaintiff to introduce contraband of any kind into BCCI.  See Pl.'s Ex. A-17 (Doc. No. 78-1 at 44-46).

## II.    STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. " 'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.' " Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III. DISCUSSION

Plaintiff claims Defendant Horne fabricated evidence to bring disciplinary charges against him in retaliation for his filing Grievance # 01231 and to justify his STG classification after the fact. As explained in its Order granting Hatley judgment on the pleadings, Plaintiff cannot prove any set of facts that would demonstrate disciplinary charges were fabricated against him to justify the STG classification. See Order on J. on the Pleadings (Doc. No. 32) at 11.

The Fourth Circuit has held that prisoners have a clearly established First Amendment right "to file a prison grievance," pursuant to an established grievance procedure, "free from retaliation." Booker v. S.C. Dep't of Corr., 855 F.3d 533, 545 (4th Cir. 2017), cert. denied, 138 S. Ct. 755 (2018). A First Amendment retaliation claim under § 1983 consists of three elements: (1) the plaintiff engaged in constitutionally protected First Amendment activity, (2) the defendant took an action that adversely affected that protected activity, and (3) there was a causal relationship between the plaintiff's protected activity and the defendant's conduct. Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017), cert. denied, 138 S. Ct. 738 (2018). The "plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Id. Finally, the plaintiff must plead sufficient facts to show that the alleged retaliatory act "was taken in response to the exercise of a constitutionally protected right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994).

The Court will accept that the filing of false disciplinary charges against an inmate in retaliation for that inmate filing a grievance would satisfy the first two elements of a First Amendment retaliation claim under § 1983. See Booker, 855 F.3d at 545; Martin, 858 F.3d at 249. At issue here, then, is whether Plaintiff has presented sufficient evidence from which a reasonable jury could conclude Defendant Horne fabricated allegations of misconduct and filed disciplinary charges against Plaintiff based upon that fabricated misconduct because Plaintiff filed Grievance # 01231.

Defendant Horne reported the allegations of disciplinary infractions more than a month after Plaintiff submitted Grievance # 01231, and three weeks after she had responded to the Grievance. See Grievance No. 01231, Compl. (Doc. No. 1 at 16-18); Step One Resp., Pl.'s Ex. A-16 (Doc. No. 78-1 at 31). Defendant Horne swore under penalty of perjury that she received

information considered to be confidential at the time that Plaintiff was conspiring with family members to smuggle contraband into the prison, and she put that information in Assistant Superintendent Diggs's office in an envelope marked "confidential."  See Horne Decl. at ¶¶ 5-6 (Doc. No. 77-1 at 2).  In her ADP investigation report, Karen Eller stated that the confidential informant's statement was in Assistant Superintendent Diggs's office and that she did not obtain a statement from the confidential informant as part of her investigation.  See Eller's ADP Rpt., Carver Aff. Ex. 4-Q (Doc. No. 77-2 at 36).  According to Eller's report, "physical evidence support[ing] [Horne's] statement" was also in Diggs's office.  See id.  In his report of the disciplinary hearing, Benjamin Carver stated that the confidential information and "their reliability" had been placed in the Assistant Superintendent's office, see Jan. 26, 2020 Hr'g Rpt., Carver Aff. Ex. 4-Q (Doc. No. 77-2 at 33), and in his affidavit, Carver swore under penalty of perjury that prior to or during the disciplinary hearing, he reviewed the confidential information that formed the basis for the disciplinary charges, see Carver Aff. at ¶ 13 (id. at 3).  Finally, Horne's responses to Plaintiff's interrogatories, which Plaintiff submitted with his Response to the summary judgment motion, identify the formerly confidential information she received - a transcript of a telephone conversation and details of the circumstances that led to the request for the transcript.  See Horne Resp. to Interrog. Nos. 9-10, Pl.'s Ex. A9 (Doc. No. 78-1 at 14).

Next, Horne declares under penalty of perjury that she was not the source of the information about the conspiracy.  Horne Decl. (Doc. No. 77-1) at ¶ 7.  In his affidavit, Carver swears under penalty of perjury that the source of the information was another DPS official.[3]  He also swears under penalty of perjury that Horne was not involved in the investigation that uncovered the evidence against Locke and that the investigation was not part of an STG

---

[3] NCDPS policy and procedures require that the name of the confidential informant be recorded and maintained by the Facility Head/Designee in a confidential file.  NCDPS Policy and Procedures, Chapter B, § 0205(l)(2) (2012).

11

investigation.  See Carver Aff. (Doc. No. 77-2) at ¶ 14.

To support his allegations that Horne fabricated the charges against him, Plaintiff dwells almost exclusively on what he views as contradictions in the various documents filed by the parties.  For example, Plaintiff cites interrogatory No. 10 and Horne's response:

> 10.     Prior to advising that [the A99 & B99] charges be brought . . . on 1-19-16. Did you have any corroborating evidence that confirmed the veracity of the information provided by the confidential informant?
>
> ANSWER:  The phone transcripts that I discuss in question 9 was the evidence[ ].  The confidential informant was inmate Locke himself talking on the phone.

See Horne Resp. to Interrog. No. 10 (Doc. No. 78-1 at 14).  Plaintiff contends that Horne's answer is evidence that she fabricated the charges because it contradicts Carver's statement that the source of the information was another DPS official.

Whatever Horne's reason for labeling Plaintiff as the confidential informant, it does not create a genuine issue for trial.  In the same response, Horne states that the evidence provided to her was a transcript of a phone call which Plaintiff made from inside the prison.  It should go without saying that neither Plaintiff nor any other inmate could have provided her a transcript of a telephone call that originated from the prison.

For Plaintiff to demonstrate a genuine issue for trial, he must identify or produce some evidence that Horne lied in her ADP statement and her sworn declaration about receiving confidential information and about the source of that information; that Eller lied in her ADP investigation report that a statement by the confidential informant and physical evidence supporting Horne's report were in Assistant Superintendent Diggs's office; and that Carver lied in his affidavit that he reviewed the confidential information and that its source was a DPS official, who was not Horne.  In other words, he must identify or produce some evidence of a conspiracy between the three DPS officers to cover up that there was no confidential

information, no confidential informant, and no evidence supporting the disciplinary charges. Plaintiff has failed to identify or produce any such evidence.

Plaintiff's evidence of such a conspiracy among the three DPS officials is the fact that he was not provided, either before or during the disciplinary hearing, any information about the identity of the confidential informant, any specifics of what the confidential information was other than what was in Horne's statement, or any information about evidence that corroborated the information provided by the confidential informant. Under DPS procedures, however, "[c]onfidential information shall not be divulged in such a manner as to reveal the identity of the confidential source[.]" NCDPS Policy and Procedures, Chapter B, § 0205(j)(2)(F) (2012); see also § 0205(j)(2)(I) ("Whenever the presentation of live testimony or physical evidence is denied by the [DHO], written statements gathered by the Investigating Officer may be used."). In both the report of the disciplinary hearing and his affidavit, Carver stated that he did not read the confidential information to Plaintiff at the hearing or allow him to see it because the information was classified and disclosure of the information to Plaintiff would be detrimental to institutional security by revealing sources and exposing internal institutional investigatory methods and practices. See Rec. of Hr'g Rpt., Carver Aff. Ex. 4Q (Doc. No. 77-2 at 33); see Horne Decl. (Doc. No. 77-1) at ¶ 6 ("At the time, the information and the source of the information were considered confidential[.]").

Finally, while three of Plaintiff's family members filed affidavits swearing they did not conspire with Plaintiff to bring contraband into the prison, those affidavits do not create a genuine issue for trial. Even assuming the allegations of a conspiracy were fabricated, Plaintiff has not identified or produced any evidence that Defendant Horne was the one who fabricated the allegations or that she fabricated the evidence supporting the allegations. Nor has he

identified or produced any evidence that Horne reported the allegations knowing them to be false.

The only evidence of retaliation Plaintiff can point to is the timing of the disciplinary charges. Mere "temporal proximity" between the inmate's protected activity and the official's allegedly retaliatory action, however, "is simply too slender a reed on which to rest a Section 1983 retaliation claim." Wagner v. Wheeler, 13 F.3d 86, 91 (4th Cir. 1993). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249.

In sum, Plaintiff has failed to demonstrate there is a genuine issue for trial. Accordingly, Defendant Horne is entitled to summary judgment as a matter of law.

**IT IS, THEREFORE, ORDERED** that Defendant Samantha Horne's Motion for Summary Judgment (Doc. No. 75) is **GRANTED**, and the Clerk of Court is respectfully instructed to close this action.

Signed: February 25, 2020

Frank D. Whitney
Chief United States District Judge